# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**09-1033**

ROBERT DUNCAN, ET AL.

VERSUS

MORENO ENERGY, INC., ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 107506-C
HONORABLE PAUL J. DEMAHY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**MARC T. AMY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Marc T. Amy and J. David Painter, Judges.

**AFFIRMED.**

**Edward P. Landry**
**Landry, Watkins, Repaske & Breaux**
**Post Office Drawer 12040**
**New Iberia, LA   70562-2040**
**(337) 364-7626**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Robert Duncan**

**Mark J. Mansfield**
**Tranchina & Mansfield, LLC**
**321 East Kirkland Street**
**Covington, LA   70433**
**(985) 892-1313**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Charlie Hodges**

**Bernard E. Boudreaux, Jr.**
**Claude Favrot Reynaud, Jr.**
**Carroll Devillier, Jr.**
**Breazeale, Sachse & Wilson**
**Post Office Box 3197**
**Baton Rouge, LA 70821-3197**
**(225) 387-4000**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Michael B. Moreno**
    **Moreno Energy, Inc.**
    **Carolyn Blanchard**

**David M. Thorguson**
**Lippman, Mahfouz , Tranchina & Thorguson, L.L.C.**
**Post Office Box 2526**
**Morgan City, LA   70381-1833**
**(985) 384-1833**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Carolyn Blanchard**
    **Michael B. Moreno**

**Randy P. Angelle**
**Bernard & Angelle**
**Post Office Box 3265**
**Lafayette, LA   70502**
**(337) 232-7231**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Wayne May**
    **Robert N. Crown**
    **Emile Dumesnil**
    **William Rucks, IV**
    **William Rucks, III**
    **Charles Kilgore**
    **Ray Flores**

AMY, Judge.

Two minority shareholders sought damages from the defendant corporation and two of its directors, among others, related to their ouster from a predecessor corporation. The trial court granted the defendants' partial motion for summary judgment, determining that, to the extent the plaintiffs could prove damages to the value of their stock in the predecessor corporation, their pecuniary damages would be limited to the difference between the amount they were paid for their stock and the value of the stock on the day before the short-form merger. The plaintiffs appeal, alleging that any damages should account for the difference between the amount they were paid and the value of the stock of the defendant corporation on the date of trial. For the following reasons, we affirm.

**Factual and Procedural Background**

The plaintiffs, Robert Duncan and Charlie Hodges, were minority shareholders in Moreno Energy Services, Inc. (MES) and, collectively, owned less then ten percent of its outstanding stock. In July 2005, MES merged with newly incorporated Moreno Energy Incorporated (MEI), pursuant to the short-form merger mechanism of La.R.S. 12:112(G). Thereafter, the plaintiffs were excluded from shareholder status in MEI and were compensated for their MES stock.

The plaintiffs filed this matter, contesting the merger and, as specifically relevant to this case, the value of the compensation paid for the MES shares at the time of the merger. The plaintiffs named various officers, directors, and shareholders of MES as defendants, alleging that the individuals committed fraud and breached certain fiduciary duties related to the merger. They further contended that the merger deprived them of rights acquired under a shareholder's agreement. The plaintiffs also

named MEI as a defendant. The plaintiffs sought rescission of the short-form merger and asserted that they were owed damages, including lost profits.

MEI and two of the defendants, Michel B. Moreno and Carolyn Blanchard[1], filed an initial motion for partial summary judgment regarding the validity of the short-form merger. The trial court granted the partial summary judgment in favor of the defendants. On appeal, a panel of this court affirmed the granting of the summary judgment, finding that "Defendants presented all the necessary evidence that there is no genuine issue of material fact that the short-form merger between MES and MEI was valid under La.R.S. 12:112(G)." *Duncan v. Moreno Energy, Inc.*, 08-786, p. 12 (La.App. 3 Cir. 12/23/08), 1 So.3d 778, 787, *writ denied*, 09-470 (La. 4/17/09), 6 So.3d 793. The panel observed that the plaintiffs failed to timely challenge the merger pursuant to La.R.S. 12:131.[2]

---

[1] The record indicates that Mr. Moreno and Ms. Blanchard were directors of MEI.

[2] In pertinent part, La.R.S. 12:131 provides:

A. Except as provided in subsection B of this section, if a corporation has, by vote of its shareholders, authorized a sale, lease or exchange of all of its assets, or has, by vote of its shareholders, become a party to a merger or consolidation, then, unless such authorization or action shall have been given or approved by at least eighty per cent of the total voting power, a shareholder who voted against such corporate action shall have the right to dissent. If a corporation has become a party to a merger pursuant to R.S. 12:112(G), the shareholders of any subsidiaries party to the merger shall have the right to dissent without regard to the proportion of the voting power which approved the merger and despite the fact that the merger was not approved by vote of the shareholders of any of the corporations involved.

. . . .

C. (1)(a) Except as provided in Paragraph (4) of this Subsection, any shareholder electing to exercise such right of dissent shall file with the corporation, prior to or at the meeting of shareholders at which such proposed corporate action is submitted to a vote, a written objection to such proposed corporate action, and shall vote his shares against such action. If such proposed corporate action be taken by the required vote, but by less than eighty percent of the total voting power, and the merger, consolidation or sale, lease or exchange of assets authorized thereby be effected, the corporation shall promptly thereafter give written notice thereof to each shareholder who filed such written objection to, and voted his shares against, such action, at such shareholder's last address on the corporation's records.

2

(b) An affidavit of the secretary or assistant secretary or of the transfer agent of the corporation that such notice has been given shall, in the absence of fraud, be prima facie evidence of the facts stated therein.

(2) Each such shareholder may, within twenty days after the mailing of such notice to him, but not thereafter, file with the corporation a demand in writing for the fair cash value of his shares as of the day before such vote was taken; provided that he state in such demand the value demanded, and a post office address to which the reply of the corporation may be sent, and at the same time deposit in escrow in a chartered bank or trust company located in the parish of the registered office of the corporation, the certificates representing his shares, duly endorsed and transferred to the corporation upon the sole condition that said certificates shall be delivered to the corporation upon payment of the value of the shares determined in accordance with the provisions of this Section. With his demand the shareholder shall deliver to the corporation, the written acknowledgment of such bank or trust company that it so holds his certificates of stock.

(3) Unless the objection, demand, and acknowledgment are made and delivered by the shareholder within the period limited in Paragraph (1) and (2), he shall conclusively be presumed to have acquiesced in the corporate action proposed or taken.

(4) In the case of a merger pursuant to R.S. 12:112(G), the dissenting shareholder need not file an objection with the corporation nor vote against the merger, but need only file with the corporation within twenty days after a copy of the merger certificate was mailed to him, a demand in writing for the cash value of his shares as of the day before the certificate was filed with the secretary of state, state in such demand the value demanded and a post office address to which the corporation's reply may be sent, deposit the certificates representing his shares in escrow as provided in Paragraph (2), and deliver to the corporation with his demand the acknowledgment of the escrow bank or trust company as prescribed in Paragraph (2).

D. If the corporation does not agree to the value so stated and demanded, or does not agree that a payment is due, it shall, within twenty days after receipt of such demand and acknowledgment, notify in writing the shareholder, at the designated post office address, of its disagreement, and shall state in such notice the value it will agree to pay if any payment should be held to be due; otherwise it shall be liable for, and shall pay to the dissatisfied shareholder, the value demanded by him for his shares.

E. In case of disagreement as to such fair cash value, or as to whether any payment is due, after compliance by the parties with the provisions of subsections C and D of this section, the dissatisfied shareholder, within sixty days after receipt of notice in writing of the corporation's disagreement, but not thereafter, may file suit against the corporation, or the merged or consolidated corporation, as the case may be, in the district court of the parish in which the corporation or the merged or consolidated corporation, as the case may be, has its registered office, praying the court to fix and decree the fair cash value of the dissatisfied shareholder's shares as of the day before such corporate action complained of was taken, and the court shall, on such evidence as may be adduced in relation thereto, determine summarily whether any payment is due, and, if so, such cash value, and render judgment accordingly. Any shareholder entitled to file such suit may, within such sixty-day period but not thereafter, intervene as a plaintiff in such suit filed by another

3

Prior to the December 2008 decision in *Moreno*, 1 So.3d 778, MEI, Mr. Moreno, and Ms. Blanchard (hereinafter "the defendants") filed another motion for partial summary judgment. They sought a ruling that if the plaintiffs prevailed on their claim, the valuation of the plaintiffs' damages for the alleged loss of value of their stock would be the difference between the amount that they were paid for their stock and the value of the stock on the day before the merger. The plaintiffs contended, instead, that valuation would be the difference between the amount they were paid for their stock and the value of the stock on the trial date. They referred to this value as rescissory damages.[3] The trial court granted the partial summary judgment and declared it final. The resulting March 2009 judgment provided:

> Movers' motion for partial summary judgment is GRANTED, specifically meaning that plaintiffs' damages, if any, for alleged loss of value of their stock in Moreno Energy Services, Inc. will be determined as of the day before the merger of Moreno Energy Services, Inc. and Moreno Energy, Inc.[4]

---

shareholder, and recover therein judgment against the corporation for the fair cash value of his shares. No order or decree shall be made by the court staying the proposed corporate action, and any such corporate action may be carried to completion notwithstanding any such suit. Failure of the shareholder to bring suit, or to intervene in such a suit, within sixty days after receipt of notice of disagreement by the corporation shall conclusively bind the shareholder (1) by the corporation's statement that no payment is due, or (2) if the corporation does not contend that no payment is due, to accept the value of his shares as fixed by the corporation in its notice of disagreement.

[3] BLACK'S LAW DICTIONARY 273, (abr. 6th ed. 1991), provides:

Such damages contemplate a return of the injured party to the position he occupied before he was induced by wrongful conduct to enter into the transaction. When return of the specific property, right, etc. is not possible (*e.g.* in a stock fraud transaction, the stock is no longer available), the rescissory damages would be the monetary equivalent (*e.g.* value of stock).

[4] In reasons for judgment, the trial court explained:

Regardless of whether the damages are called "recissory" or not is immaterial. The material question is which date is used in valuing the stock. In *Yuspeh v. Koch*, 840 So.2d 41, 02-698 (La.App. 5 Cir. 2/25/03) the Court decided that on a claim for fraud and breach of fiduciary duty in the execution of a short form merger the aggrieved party is entitled to recover the difference between the amount that they were paid for their stock and the value of the stock on the day before the merger as

4

The plaintiffs appeal, contesting the partial summary judgment and assigning the following as error:

1.    Louisiana law affords claimants asserting personal actions the right to rescission or rescissory damages (lost profits and business opportunities) for claims of fraud based in contract or tort; therefore, it was error for the trial court to limit plaintiffs' damages on their claims to the value of Moreno Energy Services, Inc. stock on the day before the merger took effect.

(Footnote omitted.)

**Discussion**

*Res Judicata*

The plaintiffs first contend that the partial motion for summary judgment could not be entered as a matter of *res judicata.* They assert that the trial judge originally assigned to this case[5] previously determined that they would be entitled to damages based on valuation of the stocks after the merger upon a showing of fraud and breach of fiduciary duties. They contend that this determination was evidenced by a February ruling which allowed discovery of evidence related to MEI's transactions three months after the merger. They also point to an excerpt from a hearing at which the limit on discovery was discussed.

First, the February 2008 judgment permitted discovery of MEI records "three months prior to and after the merger[.]" It did not reflect an affirmative determination as to the type of damages the plaintiffs would be able to recover upon

pecuniary damages.

Defendants' motions for summary judgment are granted, limiting plaintiffs' pecuniary damages on its fraud, breach of contract and breach of fiduciary duty claims to the difference between the amount that they received for their stock and the value of the stock, to which they were entitled, on the day before the merger.

[5] The matter now before the court was decided by Judge Paul J. deMahy, following a *sua sponte* order of recusal by the original trial judge in June 2008.

demonstration of their claims. Rather, it reflected the preliminary nature of the case. The trial court specifically referenced the early stage of the case when asked to clarify this limit on discovery at a March 2008 hearing after the defendants raised the burdensome nature of the discovery request. The trial court stated as follows in an exchange with defense counsel regarding the three month "cut-off":

> BY THE COURT:
> There is no cut-off. That is the problem. The cut-off was three (3) months. That was my order; but the rest of my ruling was that the other discovery requests were only temporarily denied pending what a Special Master would do.
>
> I apologize if I didn't state it with clarity and that is the reason why Mr. Landry wanted clarification. But obviously he is claiming recessionary (sic) damages and he needs the other records.
>
> BY MR. REYNAUD:
> Then we have the ability to address the original protective order with the Court, or a new protective order with the Court, which is purely a legal issue as these individuals have no right to anything on our shareholders, . . . (unintelligible . . .) and whether they are even entitled [to] recessionary (sic) damages is a matter of law and needs to be addressed by this Court before discovery is allowed.
>
> BY THE COURT:
> Now that was already . . .
>
> BY MR. REYNAUD:
> . . . didn't file a Motion for Summary Judgment on that yet, Judge, and we don't believe that they are entitled to anything beyond the date of the merger. I'd like to address those . . .
>
> BY THE COURT:
> That is not before me today, so I can't issue a ruling. But I can tell you what my ruling is going to be: Get a Special Master and furnish all the records. Let's get on with this case. There is no Motion for Summary Judgment on Recessionary (sic) damages that is going to fly *as far as I can tell at this juncture.* You are wasting your time and mine by filing it.
>
> This man is claiming that he was cheated out of almost $2 million by your client, Mr. Moreno, because of a series of actions that he took and that the subsequent corporation has benefitted, so he should get

recessionary (sic) damages.  I am going to give him his day in court on that.

BY MR. REYNAUD:
Okay.  Well, until we brief them all for you, Your Honor, just please reserve judgment and give us a shot at that.

BY THE COURT:
You have already had several shots at that.

BY MR. REYNAUD:
Your Honor, are (sic) not briefing the issue of recessionary (sic) damages at all.

BY THE COURT:
Well, I thought it was part of the original briefs . . .

BY MR. LANDRY:
Yes, it was.

BY THE COURT:
I don't know.  I didn't go through everything line-by-line; but I can tell you that it is going to be very difficult to get a Partial Summary Judgment on Recessionary (sic) Damages when you haven't even responded to full discovery yet.  Summary Judgments usually aren't granted until after full discovery.

BY MR. REYNAUD:
And then we have to determine the issue of liability, or the possibility of liability, before there is an overburdensome effort to into (sic) a corporation . . . .

BY THE COURT:
I am not trying to argue with you.  I am just trying to tell you that, in my view, once they have made a claim and it is supported by factual allegations, the only way we can tell is to get all the records.

BY MR. REYNAUD:
The issue was not before the Court today and we'd just like an opportunity to brief it.

BY THE COURT:
Yes, sir.

(Emphasis added.)  Reference to the transcript indicates that the trial court specifically did not rule on the availability of rescissory damages.  Instead, the

colloquy reflects a reluctance to consider summary judgment on the issue until further discovery was completed. Neither does the record include a judgment evidencing a determination as to the type of damages available.

This assignment lacks merits.

*Valuation*

The plaintiffs further contest the trial court's determination that their damages for alleged loss of value to their MES stock, if any, "will be determined as of the day before the merger[.]" Due to their allegation that MEI carried forward the operation of MES, they argue that they should be allowed to show "the value of MES stock as the business carried forward and its stock value increased or decreased up to the eve of trial." The plaintiffs contend that damages available under La.Civ.Code arts. 2315, 1995, and 1997 permit valuation of the stock in this manner.

The trial court considered the issue of valuation upon the defendants' motion for partial summary judgment. Louisiana Code of Civil Procedure Article 966(B) provides that the trial court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." On review, appellate courts conduct a *de novo* review of the summary judgment under the same criteria as the trial court. *Cutsinger v. Redfern*, 08-2607 (La. 5/22/09), 12 So.3d 945.

Having reviewed the record, we find no error in the trial court's resolution of the pure question of law placed before it. Louisiana Revised Statutes 12:131 provides a remedy for dissenting shareholders to contest the value provided for shares at issue following a merger pursuant to La.R.S. 12:112(G). As explained in *Moreno*,

8

1 So.3d 778, however, the plaintiffs failed to avail themselves of that remedy, and the time for that remedy has expired.

Yet, as recognized by the trial court, proof of the fraud and breach of fiduciary duty claims would provide the plaintiffs with an independent avenue of recovery and, essentially, revive the plaintiffs claim for loss of value of their stock. However, the plaintiffs can point to no theory of law setting the valuation of those profits at the time of trial. Rather, this valuation would require significant speculation as it would value a stock never owned by the plaintiffs, *i.e.*, MEI, and it would value that stock years after the plaintiffs' ouster and years after the purported fraud. It would require measurement of lost profits on corporate shares that ceased to exist at the time of the merger.

The metric designated by law to determine valuation is found in La.R.S. 12:131, which initially permits a dissenting shareholder to timely demand the cash value of his shares as of the day before the certificate of merger was filed with the secretary of state and to state the value demanded. *See* La.R.S. 12:131(C)(2). If the corporation rejects the value demanded, the shareholder may:

> [W]ithin sixty days after receipt of notice in writing of the corporation's disagreement, but not thereafter, may file suit against the corporation, or the merged or consolidated corporation . . . *praying the court to fix and decree the fair cash value of the dissatisfied shareholder's shares as of the day before such corporate action complained of was taken*[.]

La.R.S. 12:131(E). (Emphasis added.) Only upon a showing of an independent basis for recovery would dissenting shareholders be able to recover at all if they failed to avail themselves of the remedies of La.R.S. 12:131(C) and (E). As stated by the trial court in oral reasons for ruling in this matter and as recognized in *Yuspeh v. Koch*, 02-698 (La.App. 5 Cir. 2/25/03), 840 So.2d 41, *writ denied*, 03-1134 (La. 6/27/03), 847

So.2d 1277, *writ denied*, 03-1144 (La. 6/27/03), 847 So.2d 1279, even if the appraisal provided for by La.R.S. 12:131 is unavailable due to the aggrieved shareholder's failure to timely object to the value provided for the shares, that shareholder would get a "second bite of the apple" if he or she proved fraud. However, availability of a remedy does not suggest that recovery would necessarily differ.

As the plaintiffs' claim pertains to tort, La.Civ.Code art. 2315 provides:

> **Art. 2315.  Liability for acts causing damages**
> A.  Every act whatever of man that causes damage to another obliges him by his fault it happened to repair it.
>
> B.  Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person.  Damages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease.  Damages shall include any sales taxes paid by the owner on the repair or replacement of the property damaged.

As for the plaintiffs' conventional obligation claim, La.Civ.Code arts. 1995 and 1997 provide:

> **Art. 1995.  Measure of damages**
> Damages are measured by the loss sustained by the obligee and the profit of which he has been deprived.

> **Art. 1997.  Obligor in bad faith**
> An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform.

Although the damages available under Article 1997 are expansive, the article requires that damages be a direct consequence of the complained of conduct.  In light of the validity of the merger, there is no indication that valuation would include considerations beyond the scope of the appraisal envisioned by La.R.S. 12:131.  *See, e.g.*, *Yuspeh*, 840 So.2d 41.

Throughout these proceedings, reference was made to the term of rescissory damages and the question of whether these damages are available in this state. Delaware jurisprudence refers to this type of damages in cases involving fraud in the transfer of stock, yet the parties point to no jurisprudence indicating that an aggrieved shareholder's valuation would include valuation of stock of the surviving corporation in which the ousted shareholder never held an interest. Instead, the jurisprudence indicates that the equitable relief of rescissory damages may be available "to restore a plaintiff to the position occupied *before* the defendant's wrongful acts[.]" *Schultz v. Ginsburg*, 965 A.2d 661, 669 (Del. 2009), quoting BLACK'S LAW DICTIONARY (8th ed. 2004). Although we decline to comment upon the availability of the foreign concept of rescissory damages in this state, we note that, in this case, because the alleged wrongful acts are fraud and breach of fiduciary duties related to the merger, those actions, if any were present, necessarily ceased to exist at the time of the merger.

For these reasons, we find no legal basis for the plaintiffs' assertion that the valuation of any damages owed to them would include valuation of MEI stock at the date of the trial. Rather, the trial court appropriately recognized that the valuation of the stocks would be calculated in reference to the date before the merger.

This assignment lacks merit.

## DECREE

For the foregoing reasons, the partial summary judgment entered by the trial court is affirmed. All costs of this proceeding are assessed to the appellants, Robert Duncan and Charlie Hodges.

**AFFIRMED.**

11